Our final argument of the day is in Number of Appeal 242136, Garage Door Systems v. Blue Giant Equipment Corporation. Yeah, it's Mr. Hansma, right? Good afternoon. Good afternoon, Your Honor. May it please the Court. The issue on appeal is whether, under the Convention on the International Sale of Goods, the parties' contract incorporated Blue Giant's standard terms and conditions. The parties and the District Court agree that the document that constituted the offer, which plaintiffs accepted, was Blue Giant's Order Acknowledgement Form, which states right on its face, Terms and Conditions, and that's a capitalized term, Terms and Conditions can be found at, and then it gives a website that goes directly to those terms and conditions, in English. The relevant standard is whether a reasonable person of the same kind as plaintiff, in the same circumstances, would have understood that the intent was to make the terms and conditions part of the offer. In other words, would a reasonable person who is a sophisticated commercial entity and a merchant in goods of the kind, like plaintiff, and an authorized distributor of Blue Giant's goods, understand that the point of referencing terms and conditions in an offer is to make the terms and conditions part of the party's deal. Contrary to the District Court's reasoning, the CISG does not require specific language of incorporation, such as incorporated herein, or included herein, or other similar language. And we know that because of the standard that the CISG sets forth, which looks at what would a reasonable person do in the same circumstances. If the CISG required specific language, which it doesn't say that it does, if it required specific language, there would not be a need to look at the relative sophistication, the relative position, the relative circumstances of the parties in the particular case. The fact that that's what the CISG tells this court to look at, makes clear that it does not require a one-size-fits-all requirement of, you must use explicit language, as the District Court said, convincing a clear intent to incorporate. The fact that your honors look at the relative sophistication and position of the parties, clearly shows that there isn't a requirement of specific language. And we think that this was made clear in the CISG Advisory Opinion Number 13, which both parties cite and the District Court relied on, where the court actually looked at a decision from a French court that required inclusion language, and said that's problematic. And then it looked at the Golden Valley Grape Juice case out of the, I believe it's the Eastern District of California that we cite in our brief, where the terms and conditions were attached to an email. The email did not specifically reference the terms and conditions, but the District Court said that that made them part of the deal. And the Advisory Opinion looked at that and said, yes, that is a commercially reasonable approach, is how it defined it. And it said, this is the Advisory Opinion talking, it said, if the attached terms are conspicuous, the other party cannot simply ignore such terms, whether they have been sent as a separate document, or printed on the reverse side of the document. Now, here they weren't attached to the email, but we think the principle is still the same, because you have a conspicuous reference to the terms and conditions, not just in the offer itself, but the email that conveyed the offer to plaintiff, that sent the order acknowledgement form, that email itself also clearly referenced the terms and conditions and gave the website. So we think that that's very analogous to the Golden Valley Grape Juice case, that you have a conspicuous reference to terms and conditions. At this point, if you are dealing with a reasonable commercial party, who is a merchant in goods of this kind, the onus is on them now to take notice of that. Whether plaintiff actually read that or noticed it, in this particular case, isn't the question. It's whether a reasonable party would have that. Our position is that a reasonable commercial party reads the documents that are in front of them and takes notice of them. Mr. Hansman, do you agree that the terms and conditions themselves, they were filed in the district court, and therefore they are part of the record in the case? I mean, I printed them. Yes. Okay. The reason why that seems relevant to me is when you look at them, not you, when anybody looks at them, you would think, yeah, this is what you would expect. In the terms and conditions of a sale of a good, there are things in there about payment terms, delivery and pickup, warranties, changing the order, canceling the order. Yep, that's what terms and conditions, limitations on liability, severability. That's kind of par for the course when one business is selling goods to another business. I would say that, Your Honor, and I would even add to that, that if they're read, they make even further clear the intent to make the terms and conditions. The terms and conditions themselves say, hey, by the way, we are part of your deal with Blue Giant. So a reasonable commercial party that has this website called to their attention is going to look at the terms and conditions and right in the first paragraph, it's going to be clear to them the intent of these terms and conditions is to be part of any deal that you make with Blue Giant. And to Your Honor's point, it is normal, standard things, including arbitration. We think in 2021, 2022, when these contracts were entered into, arbitration was a reasonably expected term. An arbitration in Ontario, when you're contracting with an Ontario entity, is not an unexpected thing to find in terms and conditions. Mr. Hensbaum, can I ask you a question? Yes. So looking at the CISG, right? Yes. Article 8, that's where you were quoting about the reasonable person standard? Correct. Article 8.2? Yes. Article 8.3 seems to suggest that in trying to determine the party's understanding or the understanding of a reasonable person, that in addition to the actual contract, we can look at the negotiations leading up to the contract. Is that correct? Not only can you, I think it says you must. I think it requires it. And is that how the prior emails become relevant to this case? Exactly, Your Honor. And that's actually the point I was just going to move to, is that there is no plural evidence rule in the CISG. Our reading of it is that it actually requires the court to understand what would a reasonable person of this type in this circumstance understand. We don't just look at the deal itself. We look at the negotiations and the surrounding circumstances. Well, in this particular case, the district court dealt with that in a footnote where it said that the emails and the things we were citing were primarily post-contract. We disagree with that. We think the critical emails that are at issue, I mean, we think the facts show that the terms and conditions were referenced in essentially every document exchanged back and forth. But critically, in addition to the order acknowledgement form that references the terms and conditions, the email conveying the order acknowledgement form was only a couple of sentences long. Each sentence was its own line, and I believe it was the second or third sentence said, terms and conditions can be found at, and then it gave the reference to the same website. Now, again, we acknowledge the emails didn't have the word incorporated in or included in. But if you follow the reasoning of the advisory opinion and the Golden Valley Grape Juice case, and you're looking at what a reasonable commercial party would do, not the least sophisticated consumer, but a reasonable commercial party who is a merchant would understand that to mean, there's really no way of understanding that other than we want these terms and conditions to be part of our deal. No other situation has been presented to us as to why would it even be mentioned if the intent wasn't to make it part of the contract. Unless there's other questions, I will reserve the balance of my time for rebuttal. Very well. Thank you, Your Honor. You're welcome. Mr. Criswell. Good afternoon, Your Honor. It's Jeff Criswell on behalf of the Appalachia Garage Door System. A point that we see repeated throughout the appellant's briefing is that they made repeated and conspicuous references to the terms and conditions. As we have stated back in our brief in opposition,   repetition does not equal clarity. Excuse me. Reference does not equal incorporation, and repetition does not equal clarity. Continuing to say the same unclear language over and over again does not fix the original problem, which is that Blue Giant failed to specifically state that they were incorporating their terms and conditions. This is not an issue necessarily of magic words, which is something that is seized upon by Blue Giant. As shown by the case law cited by both parties, there are numerous ways in which an offeror can get his terms and conditions included in the contract. Attached to an email along with the offer. Printed on the reverse side of the offer. Mr. Crisman, can I ask a question? If they weren't being incorporated into the order acknowledgement, why mention them at all? Your Honor, on that issue, I would state that it is their burden. They are seizing on Article 8.2 of the CISG, which is the reasonable person standard. The advisory opinion that is also relied upon by Blue Giant and cited by both parties provides it under Article 8.2. The burden is on the one who prepares the communication to communicate clearly what their intent is. They failed to do so. Now, I understand that the repeated references may indicate an intention or that was their desire, but it was never clearly communicated. Hypothetically, what else could it be? I'm just curious as to what your thoughts are. What else could it be? I think it's important to take into context that reference to the terms and conditions. The sentences immediately preceding that reference to the terms and conditions, which was noted by the district court, relate to order confirmation and shipping logistics. Not really. This document confirms receipt of your purchase order. That's what it says. This document confirms receipt of your purchase order. All equipment orders must be confirmed. Only orders that have been confirmed will be scheduled by manufacturing, all parts orders. Terms and conditions can be found at Blue Giant. I guess you're asking us to read that terms and conditions specifically related to the preceding sentences are incorporated, but other terms and conditions are not? I'm only saying this, Your Honor, that the context matters and there was no indication, particularly when you're talking about something as drastic as an arbitration clause in the waiver of a jury trial, there was no indication that those terms and conditions would relate to an issue that is of such great importance and that that was to be incorporated into the contract. And I would also note… Does the content of the terms and conditions matter? I would think when you're selling goods to one another, you wouldn't expect warranties, cancellations, things like that to be oral. Two points on that, Your Honor. I think looking to the language of the terms and conditions themselves and whether or not they would tend to show an intent to be incorporated into the party's order is putting the cart before the horse because you're not to look at the extrinsic document if the intrinsic document doesn't incorporate it. Secondly, I would also note that under the CISG, all material, not every single term has to be in the contract for it to be enforceable. So you had indicated in questions to Attorney Hansma that, well, wouldn't you just expect that all these other terms would be involved in a commercial transaction? Well, perhaps you would, but they don't have to be a part of the contract, so it's not as if their absence, if not incorporated, the contract fails. Secondly, I would note that the warranty procedure, which is the basis of a lot of our underlying claims, is a separate document that was provided. It's a warranty procedure manual, a title similar to that, was separately provided along with the goods. It's identified in the order acknowledgments as something that was to be received, and it was received. It's the way the terms and conditions read, too. But the terms and conditions were not provided. I guess if you don't click the link, they're not. Correct. And, Your Honor, I would note that the parties noted, both parties noted that there is a dearth of case law in the CISG and whether or not there is an incorporation of standard terms. Notwithstanding that, the appellant has not cited a single case, CISG or non-CISG, that indicates that similar language that they use speaks for incorporation of the terms and conditions. Every single case they cited to say that, here, here's an example of incorporation. Every single case used language such as, this order is subject to or in accordance with or terms and conditions are incorporated herein. And there's a reason why those cases came out differently than we believe this one should, as the district court found. The advisory opinion, though, advisory opinion number 13, does state in rule number 2 that standard terms are included in the contract where the parties have expressly or impliedly agreed to their inclusion at the time of the formation, right? And so you talk about language saying it's subject to or in accordance with, but it seems here that the advisory opinion says that, you know, just by the course of conduct, just the exchange of information and other factors within the totality of the exchange can lead to and implicate an agreement, an implied agreement, that the terms and conditions apply. Judge Lee, I would seize on the word agree. They can expressly or impliedly agree to the incorporation of the terms. There is no such agreement. None is argued by Blue Giant, nor is there any evidence of that. If I may, I also wanted to touch on one point, Judge Lee, you raised during Attorney Hanson's argument, which is the ability for this court to look at the e-mail correspondence and documents outside of the designated contract, which is the order of acknowledgement. And one thing I'd like to clarify for the record, you have seen several references in Blue Giant's brief that their e-mails refer to the terms and conditions of sale. And they emphasize the of sale as saying, that's just as good as any other type of incorporation language. I would note that that's an overstatement of the record to indicate that that language is found in every e-mail. All the e-mails that were provided attached to the motion to dismiss, that's at 16-6, and those relate to the first set of orders in 2021, pair at the identical language. Terms and conditions can be found at the blank website. It was only a year later on the second set of dock levelers who were ordered were that terms and conditions of sale. Now, perhaps your honors don't find that to be a distinction with a difference, but I would note that it's an overstatement of the record to indicate that they repeatedly had said terms and conditions of sale. That would be unsure. And that last, the later transaction you talk about, that encompasses the vast majority of the sales, right? Correct. The first order was five sets of dock levelers and then a component parts. The second set was a 34 dock leveler order. And so would you, well, what is your position with regard to whether or not with regard to that, the 2022 order, given the fact that email says terms and conditions of sale, that the standard terms and conditions are incorporated at least into that document. I would argue that the language is inefficient or insufficient. Still your honor. I just know that I wanted to clarify for the record, the point that that was not language that was used throughout. Finally, one of the things that we discussed was that in reading blue giants brief, they repeatedly state that it could not have been clear that they were, they were expressly incorporated. That's simply not true. There, there was a manner in which they could have done this. And whether you want to call it magic words or something else, they had the burden under article eight, two of the CISG to communicate clearly their intent. They failed to communicate clearly their intent to incorporate the terms and conditions. And I think the fact that they didn't clearly communicate is evidenced by the fact that they don't just rely upon the order acknowledgements and say, look, we said at one time it was clear they have to cobble together references throughout several documents and emails to try to make what was apparently clear, clear for this court. If it was as clear as it was, as posited by blue giant, we would only need to look at one document, which is the document that parties agreed to be the contract and the order acknowledgements. With no further questions, your honors, I would request that the district court's decision be affirmed in the motion to dismiss the nine. Thank you for your time. Mr. Criswell, you're quite welcome. Thank you. Mr. Hansman, you got a little bit of time left. Just one point, your honors. Um, counsel was asked about section two of the black letter rules of the advisory opinion, where it says standard terms are included in the contract where parties have expressly or impliedly agreed. And counsel said, well, the key word there is agreed. Uh, we disagree. I mean, it's always easy when you're talking about incorporated terms for parties say, Oh, I never agreed to that. That's why the section goes on and talks about the party having a reasonable opportunity to take notice here. They did have a reasonable opportunity to take notice. And we know that because in section three, the advisory opinion says we're in electronic communications, which is what we have here. The terms are made available to and retrievable electronically, which is what we have here by that party and are accessible to that party at the time of negotiating the contract. They have an opportunity to take notice. That's exactly what happened here. Whether or not they bother to take notice is, is not the question. It's whether they had the opportunity and what a reasonable commercial party would have done unless there's additional questions. We ask that the district court opinion be reversed and that this, uh, matter be dismissed in favor of arbitration. Thank you, your honor. Mr. Hansman. Thanks to you, Mr. Criswell. Thanks to you. We've concluded today's arguments and the court will be in recess. Thank you. Okay. Okay.